IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JOHN W. McGEE, SR.  PLAINTIFF
ADC #079487

V.  NO. 5:02cv00441 GH/JWC

LARRY NORRIS, et al  DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### I. Instructions

The following recommended disposition has been sent to United States District Court Judge George Howard, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of these findings and recommendations. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original,

of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## II. Recommended Disposition

On November 17, 2006, Defendants Yarbrough and Zoldessy filed a motion for summary judgment and brief in support (docket entries #63, #64) seeking to dismiss Plaintiff's 42 U.S.C. § 1983 complaint on the grounds that he has failed to exhaust his administrative remedies with respect to each of his claims. Defendants also filed a statement of indisputable material facts in support of their motion (docket entry #65) pursuant to Local Rule 56.1 of the Rules of the United States District Court for the Eastern District of Arkansas.

On February 5, 2007, Defendants Yarbrough and Zoldessy filed supplemental evidence in support of their motion for summary judgment, brief in support, and statement of indisputable material facts (docket entries #66, #67, #68) seeking to dismiss Plaintiff's complaint on the additional grounds of absence of deliberate medical indifference. Although Plaintiff is represented by counsel, he has filed no response to Defendants' motion for summary judgment.

**A.    Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

2

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, giving her the benefit of all reasonable factual inferences. Reed v. ULS Corp., 178 F.3d 988, 990 (8th Cir. 1999). A moving party is nevertheless entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she will have the burden of proof at trial. Celotex, 477 U.S. at 322-23. To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists. Id. at 324; Fed. R. Civ. P. 56(e). A nonmovant has an obligation to present affirmative evidence to support her claims. Settle v. Ross, 992 F.2d 162, 163-64 (8th Cir. 1993).

**B.    Factual Background**

On April 3, 2002, Plaintiff, a state prisoner now represented by counsel, originally filed this § 1983 action pro se in the United States District Court for the Western District of Arkansas (see Case No. 02-CV-2080, docket entry #3). By order entered November 15, 2002, Judge Robert T. Dawson transferred a portion of Plaintiff's original case to the Eastern District of Arkansas, where the events surrounding Plaintiff's Eighth Amendment deliberate medical indifference claim occurred (see Case No. 02-CV-2080, docket entry #21). Plaintiff's claims against the Arkansas Department of Correction ("ADC") officials and their medical providers were transferred in the interest of justice, rather than dismissed, on the grounds that the filing of a new complaint would be barred by the statute of limitations.

Plaintiff's Eighth Amendment deliberate medical indifference claim originates from a beating he sustained while detained at the Sebastian County Detention Center in April

1999, for a hearing on a sentence reduction (docket entry #5, ¶ 4). This lawsuit pertains to events that occurred at the ADC subsequent to that assault. Plaintiff claims that Defendants "negligently and intentionally failed to treat, diagnose, examine or refer [him] . . . to an expert for further treatment of his serious injuries. Said conduct has resulted in facial disfigurement, neural sensation loss, permanent dental disfigurement and teeth dysfunction and other medical conditions that would not have occurred if adequate medical care had been provided . . . . Plaintiff was not given proper medical care as to initial diagnosis, follow-up and referrals as required by accepted medical practices in this country" (docket entry #5, ¶¶ 7 & 12).

By way of background (see generally docket entries #63, #64, #65), on April 14, 2004, I conducted a hearing regarding the issue of administrative exhaustion (see docket entry #35). Following that hearing I entered proposed findings recommending that dismissal on exhaustion grounds be denied. One of the determinations in the proposed findings was that the five grievances introduced at the hearing were the only grievances Plaintiff had filed which were possibly relevant to the present case:

> "At the hearing, the ADC Defendants introduced five sets of grievance papers and their witnesses testified that these are the sole grievances in their records. Plaintiff was unable to say with any certainty whether he filed additional relevant grievances. The Court finds Defendants' evidence to be credible, and finds that Plaintiff did not file any additional grievances." (see docket entry #47, pg. 5).

This finding, along with the others, was adopted by the District Court (see docket entry #49). Plaintiff's case was thereafter subsequently dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) as to Defendants CMS Medical Services (and its employees and agents), Adedigi, Roaf, ADC, Young, Walls, Jane Does, and John Does. It was further recommended that Plaintiff's case be permitted to proceed against Defendants Norris,

Reed, Zoldessy, and Yarbrough (see docket entry #55). On September 1, 2006, the District Judge adopted these recommendations (see docket entry #57).

Only Grievance No. CU-01-3898 has been fully exhausted. This was also the only grievance, when read with the CMS response, which referenced the alleged failure of medical treatment which is asserted by Plaintiff (see docket entry #47, pgs. 7-9). In this grievance, and his appeal of same, Plaintiff names only two of the four Defendants—Yarbrough and Reed. In this grievance, Plaintiff stated that from March 12, 2001, to June 26, 2001, Defendants Yarbrough, Dr. Adedigi, and the "CMS infirmary staff" had neglected his requests for medical recommendations and examinations. He went on to set forth the details of his condition and alleged that the [named Defendants' and CMS staff's] "delays and patterns" constituted deliberate indifference to his serious medical needs. He alleged that he was continuously in pain and that his condition was worsening. For relief, he requested an immediate recommendation from Defendants Yarbrough and Reed to the parole board to release him back to supervised parole so he could receive proper medical care for the facial injuries he sustained in connection with the beating at the Sebastian County Detention Center.

**C.  Analysis**

Pursuant to Local Rule 56.1(c) of the Rules of the United States District Court for the Eastern District of Arkansas, all material facts set forth in Defendants' statement of material facts shall be deemed admitted unless controverted by a statement filed by Plaintiff. Counsel for Plaintiff has filed no such statement despite a clear opportunity to do so. Therefore although a litigant's verified complaint is generally considered an affidavit for purposes of summary judgment, Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994), the Court should adopt Defendants' recitation of the facts. See Jackson v. Arkansas Dep't

5

of Educ., Vocational & Technical Educ. Div., 272 F.3d 1020, 1027 (8th Cir. 2001) ("pursuant to Local Rule 56.1(c), [plaintiff] forfeited her ability to contest the facts presented in the Department's original summary judgment motion by her failure to respond to the Department's motion"); see also In re: Bridge Info. Sys., Inc., 297 B.R. 759, 762 n.2 (Bankr. E.D. Mo. 2003) (citing Jackson, 272 F.3d at 1027-28) (same); Washington v. Robinson, 68 F.3d 479 (8th Cir. Oct. 18, 1995) (unpub. per curiam) (§ 1983 lawsuit involving excessive force used in connection with arrest dismissed on summary judgment motion; no abuse of discretion where district court deemed facts admitted and granted summary judgment based upon plaintiff's failure to respond to the motion within the time required by the Arkansas local rules). For the reasons explained herein, Defendants' motion should be granted.

> 1. **Administrative Exhaustion**

Defendants first seek dismissal on the grounds that Plaintiff failed to name each individual Defendant in his only exhausted grievance; therefore he has failed to exhaust his administrative remedies and his entire complaint must be dismissed. An inmate must exhaust all available administrative remedies prior to initiating a § 1983 prison conditions suit. 42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted"); Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003) ("Under the plain language of § 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court . . . . If exhaustion was not completed at the time of filing, dismissal is mandatory"); Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000) (holding that "all available prison grievance remedies must be exhausted as to all of the [plaintiff's] claims"); Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), cert. denied, 531 U.S. 1156 (2001) (stating that "if

administrative remedies are available, the prisoner must exhaust them," regardless of his subjective beliefs about their availability).  At the relevant time of this action, exhaustion of remedies required the inmate to timely file and appeal a particular grievance through several administrative levels. Plaintiff was required to appeal his grievance(s) to the highest administrative level, the Deputy/Assistant Director of the ADC.  See ADC Adm. Dir. 97-08 § V(E)(4)(a) (July 3, 1997).

The Eighth Circuit recently mandated the dismissal of § 1983 complaints pursuant to § 1997e(a) based on the inmate's failure to identify by name during the grievance process each individual defendant he later sued in federal court.  See Abdul-Muhammad, et al. v. Kempker, 450 F.3d 350, 351-52 (8th Cir. 2006) ("a prisoner who files a complaint in federal court asserting multiple claims against multiple prison officials based on multiple prison grievances must have exhausted each claim against each defendant in at least one of the grievances").[1]  Even more recently, however, the United States Supreme Court's decision in Jones v. Bock, 127 S. Ct. 910 (2007) held that such an omission was not fatal to a plaintiff's entire case.  Jones challenged the rule requiring that every defendant to be named in a subsequent lawsuit must also be named during the grievance process as well as the "total exhaustion" rule.  Jones first concluded that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."  Id. at 921.  The Court next concluded that

---

[1] Citing Dodson v. Norris, 168 Fed. Appx. 141 (8th Cir. 2006) (per curiam) (affirming dismissal of complaint for failure to exhaust when plaintiff did not file grievances against certain defendants named in complaint); Coleman v. Kemna, 83 Fed. Appx. 140, 141 (8th Cir. 2003) (per curiam) (affirming dismissal of complaint when plaintiff did not file a grievance against a prison official named in complaint); Grady v. Cross, 76 Fed. Appx. 760, 761 (8th Cir. 2003) (per curiam) (affirming dismissal because plaintiff "did not file and exhaust a grievance against . . . a named defendant" before filing complaint); Love v. May, 63 Fed. Appx. 282, 283 (8th Cir. 2003) (per curiam) (affirming dismissal because plaintiff did not file grievances against three defendants named in complaint).

"exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." Jones held that the PLRA itself does not impose such a requirement; instead, the parties must look to what the prison grievance process itself requires. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. at 923. As a final matter, Jones rejected the "total exhaustion" rule requiring dismissal of the complaint as a whole, concluding instead that courts should proceed with the exhausted claims in instances where the plaintiff has failed to exhaust some, but not all, of the claims asserted. Id. at 924-26.

Plaintiff named only Defendants Yarbrough and Reed in his sole exhausted grievance; therefore, the determination of whether this omission requires the dismissal of Defendants Zoldessy and Norris from this action rests on what the ADC prison grievance process itself required during the relevant time period. This Court cannot go outside the record and nothing has been provided that addresses the issue. For this reason, Defendants' motion should be denied on exhaustion grounds.

### 2. Deliberate Medical Indifference

Defendants alternatively contend that they were not deliberately indifferent to Plaintiff's medical needs. To prevail on his claim of deliberate medical indifference, Plaintiff must allege acts or omissions by Defendants "sufficiently harmful to evidence deliberate indifference to [his] serious medical needs." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The Eighth Circuit has interpreted this standard to include both objective and subjective components: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs

and (2) that the prison officials actually knew of but deliberately disregarded those needs." Jolly, 205 F.3d at 1096 (citing Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)); see also Stetter v. Riddick, 6 Fed. Appx. 522 (8th Cir. 2001) (unpub. per curiam) (citing Moore v. Jackson, 123 F.3d 1082, 1086 (8th Cir. 1997)). This standard has been well settled for some time and Plaintiff's burden is substantial. In determining whether Defendants were deliberately indifferent to his serious medical needs, Plaintiff must demonstrate "more than negligence, more even than gross negligence." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Moreover, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Id.

First, Plaintiff must establish that he suffered from an objectively serious medical need. A medical need is "serious" if it has been diagnosed by a physician as mandating treatment or if it is so obvious that even a lay person would recognize the necessity for a physician's treatment. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); see also Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999). Next, Plaintiff must establish that Defendants were (1) personally aware of his serious medical needs; and (2) deliberately disregarded those needs. Coleman, 114 F.3d at 785-86.

When an inmate is complaining about a delay in treatment, as Plaintiff herein is, the objective "seriousness" of the deprivation must be measured by reference to the *effect* of any delay. Coleman, 114 F.3d at 784 (citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)). To succeed on his claim, Plaintiff must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment, i.e., that

Defendants ignored a critical or escalating situation, or that the delay adversely affected his prognosis. Id.; Beyerbach v. Sears, 49 F.3d 1324, 1326-27 (8th Cir. 1995).[2]

Generally, a supervisory official cannot be liable under § 1983 for alleged medical mistreatment unless she was personally involved in the violation or where her corrective inaction constitutes deliberate indifference toward the violation. Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (citing Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993)); see also Johnson v. Lockhart, 941 F.2d 705, 707 (8th Cir. 1991) ("Abdication of policy-making and oversight responsibilities can reach the level of deliberate indifference when tacit authorization of subordinates' misconduct causes constitutional injury"). To be held liable, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." Boyd, 47 F.3d at 968 (quoting Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994)).

As an initial matter, this Court has previously held that Plaintiff's exhausted grievance concerned events other than an initial improper diagnosis, delayed examination, and treatment for his injuries which allegedly led to avoidable permanent injuries. Moreover, it concerned allegations of neglect during the period of March 12, 2001, to June 27, 2001. In fact, as the only relevant and exhausted grievance presented, the Court found it highly suspect that it was not filed until more than two years after Plaintiff's injuries were sustained. That being said, CMS's response to Plaintiff's grievance indicated that Defendant Yarbrough interviewed Plaintiff on July 8, 2001, and noted his complaints as

---

[2] See also the following unpublished cases of Jackson v. Hallazgo, 30 Fed. Appx. 668 (8th Cir. Mar. 6, 2002) (unpub. per curiam) (citing Coleman, 114 F.3d at 784) ("[a]n inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs"); O'Neal v. White, 221 F.3d 1343 (8th Cir. July 12, 2000) (unpub. per curiam) (citing Crowley, 109 F.3d at 502) (concluding that plaintiff's "failure to submit verifying medical evidence to show a detrimental effect from any delay in tests, surgery, or alternative treatments was fatal to his Eighth Amendment claim").

follows: "Inmate McGee states he was injured in 1999 and that since that time he has been denied medical treatment for his facial injury." Taken together, the grievance and CMS's response to it, were sufficient to show that Defendants were put on notice of the problem and to give them a chance to rectify it short of litigation (refer to docket entry #47). In addition, as previously explained in this recommended disposition, Plaintiff's retained counsel has failed to respond to either Defendants' original motion or to the supplemental evidence in support; therefore, all material facts set forth in Defendants' statement of material facts should be deemed admitted by this Court.

Defendants neither address whether Plaintiff suffered from an objectively serious medical need, nor do they dispute that they had knowledge of Plaintiff's medical needs; instead, they address the heart of the issue— whether Plaintiff has demonstrated that they deliberately disregarded his medical needs. The Court will therefore do the same.

The evidence in the record indicates (see docket entries #66, #68) that Plaintiff was housed at the Cummins Unit on April 3, 1999. At that time, he was transported from the Cummins Unit to the Sebastian County Jail for an appearance in state court. While at the Sebastian County Jail, Plaintiff was involved in an altercation that resulted in a fracture to his left orbital area, as well as a fracture to his No. 9 tooth. On April 19, 1999, Plaintiff was returned from the Sebastian County Jail to the Cummins Unit. Following his return, and until he was paroled on October 22, 1999, he was examined and/or treated for the injuries he suffered as follows: (1) by physicians on ten separate occasions; (2) by dentists on two occasions; and (3) by an ear, nose and throat physician ("ENT") on one occasion. In addition, radiology studies (x-rays) were taken on three different occasions[3] and a CT Scan

---
[3] Twice on April 21, 1999, and once on June 7, 1999.

was done on one occasion.[4]  Based on Plaintiff's continued complaints, on October 20, 1999, he was examined by Dr. John L. Dornhoffer, an ENT physician with UAMS.[5]  Dr. Dornhoffer concluded that Plaintiff had a left tripod fracture and that any surgical intervention would be primarily for cosmetic purposes rather than functional need.

Two days after his appointment and consultation with Dr. Dornhoffer, Plaintiff was paroled.  Ten months later he was again returned from parole on December 18, 2000.  On January 3, 2001, he was transferred to the Cummins Unit.  On March 5, 2001, Defendant Yarbrough assumed the job of Health Services Unit Manager at the Cummins Unit.  At that time, she became administratively responsible for managing the health care delivery system to the inmates housed at the Cummins Unit.  During 2001, Defendant Yarbrough received complaints from Plaintiff regarding the injuries he had suffered in the 1999 altercation.  Defendant Zoldessy served as the Regional Dental Director in 2001.  One of his responsibilities was overseeing dental care to inmates housed in the various units of the ADC, including the Cummins Unit. In 2001, Defendant Yarbrough interviewed Plaintiff regarding his complaints and, as a result, contacted Defendant Zoldessy and requested that he examine Plaintiff.

On September 5, 2001, Defendant Zoldessy reviewed Plaintiff's records and also examined him.  Although the examination revealed a well-healed injury, and the records established that an ENT had determined surgery would be primarily for cosmetic purposes only, Defendant Zoldessy nevertheless ordered a complete facial series of x-rays.  In addition, Defendant Zoldessy scheduled a meeting with Dr. Patrick Kirk at the Department of Oral and Maxillofacial Surgery at the University of Tennessee College of Dentistry in

---

[4] On August 27, 1999.

[5] The University of Arkansas for Medical Sciences.

12

Memphis Tennessee. The purpose of the consultation was to get a second opinion on Plaintiff's condition. On September 13, 2001, Defendant Zoldessy met with Dr. Kirk, who concluded that any surgical intervention would be for cosmetic purposes only. Defendant Zoldessy met with Plaintiff on October 4, 2001, and advised him of his consultation with Dr. Kirk, as well as Dr. Kirk's findings. On October 9, 2001, Plaintiff was transferred from the Cummins Unit to the North Central Unit. Since that transfer, neither Defendant Yarbrough or Zoldessy has had any further contact with Plaintiff. Based on these facts, and the affidavits in support, the Court concludes that Defendants Yarbrough and Zoldessy were in no way deliberately indifferent to Plaintiff's medical needs.

With respect to Defendants Norris and Reed, who are not parties to the present motion, the record reveals that Plaintiff's only exhausted grievance concerned allegations of neglect during the period of March 12, 2001, to June 27, 2001, and neither of these Defendants were named in that grievance. Even assuming for the sake of argument that Plaintiff was not treated between March and June 2001, in order to succeed on his claim, he was required to come forth with verifying medical evidence to establish that the alleged delay in his medical treatment adversely affected his prognosis. This, he has not done. None of the Defendants (Yarbrough, Zoldessy, Norris, or Reed) can be held liable for this reason alone. It also bears repeating, with respect to Defendants Norris and Reed, that between the time of the altercation in April 1999 and October 1999, Plaintiff was treated by physicians on ten separate occasions, by dentists twice, and by a UAMS physician once before being paroled. This level of treatment, within a six-month period of time, simply does not equate to deliberate medical indifference.

### III. Conclusion

In accordance with the above, IT IS, THEREFORE, RECOMMENDED that:

1.	Defendant Yarbrough's and Zoldessy's motion for summary judgment (docket entry #63) should be GRANTED.

2.	Plaintiff's case should be DISMISSED IN ITS ENTIRETY.

3.	Any pending motions should be DENIED AS MOOT.

4.	The Court should certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any order adopting this recommendation, and any judgment entered thereunder, would not be taken in good faith.

DATED this 5th day of April, 2007.

_____
UNITED STATES MAGISTRATE JUDGE